IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

TERRY READUS,

    Plaintiff,

v.                                                                                  Case No.  2:17-cv-2380

SQA MAHADEV, LLC d/b/a
GARDEN TREE HOTELS,                                    JURY DEMANDED
QUNISHBHAI PATEL and SCHWETA PATEL,

    Defendants.

_____

## COMPLAINT
_____

COMES NOW Plaintiff Terry Readus ("Mr. Readus") and brings this action against his former employer Defendants Garden Tree Hotels, and owners Qunishbhai Patel and Schweta Patel for race discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981 and for racial and national origin discrimination in violation of the Tennessee Human Rights Act. Plaintiff will amend this Complaint to add claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., upon receipt of his notice of right to sue.  In support of his Complaint, Mr. Readus would state as follows:

## PARTIES

1.    Plaintiff Terry Readus ("Mr. Readus") is an African-American, born in the United States.  At all times relevant within, Mr. Readus lived and worked in Memphis, Shelby County, Tennessee.

2.    Defendant SQA MAHADEV, LLC d/b/a Garden Tree Hotels is located at 6101 Shelby Oaks Dr., Memphis, Tennessee 38134.

3. Defendant Qunishbhai Patel is an owner of Garden Tree Hotels.

4. Defendant Schweta Patel is an owner of Garden Tree Hotels.

## JURISDICTION

5. The Court has jurisdiction over Plaintiff's claims brought through 28 U.S.C. § 1981 pursuant to 28 U.S.C. §§ 1331, 1343(3). The Court has supplementary jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## STATEMENT OF FACTS

6. Mr. Readus was hired as a houseman by Garden Tree Hotels on October 12, 2015.

7. Mr. Readus's duties as a houseman were to clean the public areas of the hotel.

8. In or around July 2016, Mr. Readus' hours were cut by management and the owners. At this time, Mr. Readus was under the impression that all housekeeping employees' hours had been cut.

9. On or about July 15, 2016, after a manager's meeting, manager, Martin Golden, was approached by Qunishbhai Patel's wife, Schweta Patel. Schweta Patel was part of the management team at Garden Tree Hotel with her husband.

10. Schweta Patel asked Mr. Golden to reassess the work hours of the existing housekeeping staff at Garden Tree Hotel. She wished to reduce or eliminate the hours of the existing Garden Tree Hotel housekeeping staff. At the time of this conversation, Garden Tree Hotels employed two Hispanic housekeepers, Yesenia Castro and another employee "Maria" which is believed to be an alias. Garden Tree Hotel also employed four African-American housekeepers Derrick Triplet, Karen Banks, Janelle Harris and Marlon Britt. Mr. Terry Readus was employed as a houseman with the cleaning staff as well.

11. Schweta Patel told Mr. Golden she wished to reduce the total number of employee hours. Unfortunately, she wanted Mr. Golden to do this by terminating the employment of the African-American housekeeping staff. She then wished that Mr. Golden actually increase the hours for the remaining Hispanic employees.

12. Both Schweta Patel and Qunishbhai Patel made frequent unfavorable comments about African-Americans. Defendants regularly referred to African-Americans as "lazy." Similarly, they both often expressed the opinion that Hispanics worked harder than African-Americans. Both Schweta Patel and Qunishbhai Patel are Indian nationals. Qunishbhai Patel would often refer to African-American employees as "kalyia" a pejorative term for black people in their native language. Qunishbhai Patel on numerous occasions pushed Mr. Golden to hire Hispanics over African-American applicants. He would go so far as to bring applications received at his other hotels of Hispanic employees and encourage management to consider hiring them. He never did this for an African-American applicant.

13. On or about July 25, 2016, Golden completed a review of staffing levels. Because of a normal drop in business for that time of year, there was need for fewer housekeeping employees. Golden recommended to the Patels that all employees, regardless of race, receive schedules with comparably reduced hours.

14. In response to Golden's recommendation, Qunishbhai Patel wanted him to instead terminate the employment of Derrick Triplet, Karen Banks, Janelle Harris and Marlon Britt and Terry Readus. He also instructed that Mr. Golden was to increase the hours for the Hispanic housekeeping staff.

15. Golden explained to Qunishbhai Patel that these staffing choices were discriminatory and did not make sense. In particular, "Maria" had very poor English skills,

which made it difficult for staff to communicate with her and impacted her efficiency on the job. Additionally, Golden had to give Maria a verbal warning for insubordination. "Maria" had less seniority than other employees, particularly Mr. Readus. She also had significantly more issues with absenteeism than the African-American employees that were being terminated.

16. On or about August 1, 2016, Golden received notice from the EEOC that a Charge of Discrimination had been filed by Terry Readus. When Golden presented a copy of the charge to the Qunishbhai Patel, he was told not to respond, that he had attorneys that would handle the situation, but that he needed to fire Mr. Readus "immediately." Golden advised him again that the ramifications of this action would be illegal, discriminatory, and wrongful actions in retaliation to the complaint. Golden refused Qunishbhai Patel's direction to terminate Mr. Readus.

17. Unfortunately, Golden was forced to comply with much of Qunishbhai Patel's discriminatory demands. Though he was able to keep Derrick Triplet, Karen Banks, Janelle Harris and Terry Readus's employment from being terminated, the Patels would still retaliate against them. They would routinely send these hourly employees home early, thus depriving them of hourly pay. They would never send the Hispanics employees home early.

18. On or about August 3, 2016, Schweta Patel instructed Mr. Golden to send Mr. Readus home and remove him from the schedule. Also, she instructed that "Maria," the Hispanic housekeeper, be promoted to Mr. Readus's houseman position. This would have effectively eliminated Mr. Readus's job functions. Once again, Mr. Golden resisted this request because it was discriminatory and retaliatory.

19. On or about August 5, 2016, Qunishbhai Patel gave Mr. Readus an unattainable work task, well outside of his job scope and after his scheduled work hours. Specifically, Mr.

Patel asked Mr. Readus to vacuum sheetrock out of a carpet (something that was not possible without an industrial vacuum, which the company did not have). After Mr. Readus was predictably unable to clean this sheetrock using the normal vacuum cleaner that was available, Mr. Patel verbally reprimanded Mr. Readus. He then asked Golden, in front of other subordinates, if Mr. Readus was one of the EEOC complainants. Golden responded, "Yes." Mr. Patel then said to terminate him now and put him off the property. Golden explained that there was not cause to immediately terminate Mr. Readus's employment.

20. On September 8, 2016, Golden tendered his resignation from Garden Tree Inn. However, prior to his turning in his resignation, he observed continuing harassment of all remaining African-American employees, particularly Mr. Readus. The hours of the African-American employees remained severely reduced, while those of the Hispanic staff were kept above 40 hours per week. Not receiving enough hours to support themselves, some of the African-American employees quit.

21. After Golden left, harassment of Mr. Readus intensified. Management would repeatedly require Mr. Readus to do more work than Hispanic employees. They also had him do the work of the Hispanic employees when they were out sick.

22. On March 16, 2017, Mr. Readus's employment was terminated.

## CAUSES OF ACTION

23. Plaintiff incorporates the foregoing paragraphs above as though specifically set forth herein, and alleges that:

24. Defendants' actions constitute unlawful racial and national origin discrimination in violation of 42 U.S.C. § 1981;

25.     Defendants' actions constitute race and national origin discrimination in violation of the Tennessee Human Rights Act;

26.     As a direct and proximate result of Defendants' unlawful discriminatory conduct toward Plaintiff and violations of Plaintiff's federally protected rights, Plaintiff has suffered lost wages and benefits and has sustained other pecuniary loss.  Plaintiff, as a result of Defendants' actions, has suffered damage to his professional career and professional reputation, as well as to his personal reputation. Defendants' actions have been demeaning to Plaintiff and have caused him to suffer pain, humiliation, and embarrassment, as well as emotional distress; and

27.     Defendants' unlawful actions complained of above were intentional, malicious, and taken in reckless disregard to the rights of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the following relief be granted following a jury verdict in their favor:

28.     Back pay, lost benefits, and other pecuniary losses proximately caused by Defendants' unlawful conduct;

29.     Reinstatement to employment;

30.     Front pay and the value of future lost benefits if reinstatement is not feasible;

31.     Compensatory damages against Defendant in an amount to be determined by the court;

32.     Punitive damages against Defendant in an amount to be determined by the court;

33.     All costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees and reasonable attorneys' fees allowed under actions brought pursuant to 42 U.S.C. § 1981, § 1983, § 1988, and the Tennessee Human Rights Act; and,

34. Such further relief as is deemed just and proper.

Respectfully submitted,

**DONATI LAW, PLLC**

s/Robert A. Donati
Robert A. Donati #25355


s/ Bryce Ashby
Bryce W. Ashby #26179
1545 Union Avenue
Memphis, TN 38104
901/278-1004
bryce@donatilaw.com

Attorneys for Plaintiff